IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| TRISTAN HARPER, | ) | |
| | ) | |
| Plaintiff, | ) | 8:11CV30 |
| | ) | |
| v. | ) | |
| | ) | |
| UNIVERSITY OF NEBRASKA OMAHA, | ) | MEMORANDUM AND ORDER ON |
| and DOES 1-5, inclusive, | ) | DEFENDANTS' MOTION TO DISMISS |
| | ) | |
| Defendants. | ) | |
| | ) | |

On February 1, 2011, the plaintiff, Tristan Harper (Harper), filed a complaint against Defendants University of Nebraska Omaha (UNO) and "Does 1-5 inclusive." (Compl., ECF No. 1.)[1] The defendants have filed a motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Mot. to Dismiss, ECF No. 5.) My analysis of the defendants' motion follows.

## I.   BACKGROUND

The complaint alleges as follows. UNO "is a public institution organized and existing under the laws of the State of Nebraska." (Compl. ¶ 3.) Harper is a resident of Omaha, Nebraska, and was

---

[1] The complaint states that Harper "is ignorant of the names or identities of the parties sued herein as DOES 1-5, but will amend the complaint to properly identify those parties once their true identities are ascertained." (Compl. ¶ 4.) Elsewhere in his complaint, however, Harper refers to five specific individuals as "defendants." (See, e.g., id. ¶¶ 18 ("Defendant Randy Sell"), 19 ("Defendant Wade Robinson"), 20 ("Defendant Shareen Thewke, Defendant Kent Lavene, and Defendant Richard Hancock").) None of these five individuals is named as a defendant in the caption of the complaint; there is no indication that the plaintiff considers them to be, or to possibly be, "Does 1-5"; and it appears that the plaintiff has not sought to serve any of them. Nevertheless, they "may be properly in [this] case" by virtue of their identification in the body of the complaint. See Miller v. Hedrick, 140 F. App'x 640, 641 (8th Cir. 2005) (quoting Rice v. Hamilton Air Force Base Commissary, 720 F.2d 1082, 1085 (9th Cir. 1983)). But see Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties."). For the purposes of this memorandum, I consider the term "defendants" to include Sell, Robinson, Thewke, Lavene, and Hancock.

enrolled as a student at UNO "when the acts that give rise to []his claim[s] occurred." (Id. ¶¶ 2, 6.)

In the spring of 2007, Harper "approached three different staff members in the Philosophy [D]epartment" at UNO to inquire "about the lack of African American representation in the curriculum." (Id. ¶¶ 5, 7.) The staff members dismissed Harper's question, and one of them said, "So are you hitting us with the race card?" (Id. ¶ 7.)

On or about August 2, 2007, Harper visited the Financial Aid Office at UNO to turn in a form. (Compl. ¶¶ 5, 9-11.) Harper "noticed that the other students were being processed rather quickly, but [he], the only black male in the office, was not being helped." (Id. ¶ 10.) "After not receiving assistance regarding the financial aid form, [Harper] signed his mother's signature and handed the form to a staff member in the Financial Aid Office." (Id. ¶ 11.)

On August 8, 2007, Harper was told that his mother needed to come to the Financial Aid Office and sign the form that Harper submitted on August 2. (Id. ¶ 12.) Harper's mother complied with this request. (Id.) On August 9, 2007, Harper was summoned to a meeting in the Financial Aid Office to "discuss why he signed his mother's name on August 2, 200[7]." (Id. ¶ 13.) During this meeting, Harper "explained that his mother was in the hospital at the time[,] and no one was giving him assistance in the office." (Id. ¶ 14.) Harper noticed that staff members in the office were listening in on the meeting, and he decided "to file a complaint against the individuals [about] how they were handling the matter." (Id. ¶¶ 15-16.)[2] No one would assist Harper with his complaint, but "Caucasian students were being helped." (Id. ¶ 17.) After a time, Randy Sell, the Director of Financial Aid, "came out to discuss the incident with [Harper]," and Harper expressed his belief that he was being treated unfairly based on his race. (Id. ¶ 18.) Sell did not help Harper file a formal discrimination complaint, however. (Id.)

On August 9, 2007, Wade Robinson, Associate Vice Chancellor for Student Affairs at UNO, "sent an email to . . . Sell and other staff members advising them to beware of [Harper] and not to hesitate to contact Campus Security." (Id. ¶ 19.) On August 10, 2007, Sell sent an email to Shareen Thewke, Kent Lavene, and Richard Hancock indicating that "he hoped that the university would

---

[2] It is not clear whether Harper decided to complain about the handling of the August 9 meeting, the lack of service he received on August 2, the eavesdropping staff members, or some combination of these matters.

consider banning [Harper] from school." (Id. ¶ 20.)³ In his email, "Sell acknowledged that in past situations he has used his judgment to allow students to 'make things right' and get signatures the correct way," but he added that "this might not be the best way to go" in Harper's case because of his "history." (Id. ¶ 21.)

Later on August 10, 2007, Sell and Robinson met with Harper and told him "that he would probably not be returning to the university and that he was not to speak of God." (Id. ¶ 22.) Robinson told Harper to contact Sharon Ulmar, Director of Human Resources and Director of Equal Employment Opportunity, if he wanted to file a complaint. (Id. ¶ 24.) "[Harper] contacted Ms. Ulmar and she told him that he was too young [to] attend [UNO], and therefore [he] could not file a complaint." (Id.) On August 15, 2007, Harper "filed a report with Campus Safety" "because no one was helping him file a complaint." (Id. ¶ 25.)

On August 24, 2007, Lavene notified Harper that UNO "was initiating the judicial process against [Harper] for violating UNO Student Codes of Conduct." (Id. ¶ 26.) On September 18, 2007, Lavene notified Harper that UNO "had sanctioned him for violating Student Codes of Conduct." (Id. ¶ 27.) More specifically, Harper "was suspended from attending classes for one year, banned and barred from the entire campus for the duration of his suspension," directed "to have a psychological evaluation prior to any re-enrollment," directed to provide UNO Judicial Affairs with evidence of compliance with a psychological treatment plan prior to his re-enrollment, and barred from "direct or indirect contact with the UNO Financial Aid Office." (Id.)

On September 21, 2007, Harper appealed his suspension. (Id. ¶ 28.)⁴ Harper was allowed to attend classes while his appeal was pending; however, Robinson instructed Harper that "he was only allowed to be on campus to attend classes," and he would have to wait in the Office of Multicultural Affairs between classes. (Id. ¶ 29.) Robinson added that Harper would have to request permission "to use the library or any other campus facility," and he would have to leave campus immediately after his classes ended. (Id. ¶ 29.)

---

³ The complaint indicates that Hancock is a Campus Safety Lieutenant. (Compl. ¶ 40.) Thewke's and Lavene's positions are not identified.

⁴ It is not clear whether Harper appealed sanctions other than the suspension.

Harper became "low on funds," but he was aware that he could not contact the Financial Aid Office. (Id. ¶ 31.) On September 26, 2007, Harper went to the Registrar's Office to "inquire about a short-term loan." (Id. ¶ 32.) Harper "was turned away." (Id.) On September 28, 2007, Robinson learned that Harper sought assistance from the Registrar's Office and, via letter, informed Harper that the agreement to allow Harper to attend classes was revoked. (Id. ¶ 33.) Robinson also warned Harper that he would "be subject to arrest for trespassing" if he were seen on campus. (Id.)

Harper's appeal was heard on October 25, 2007, with Levine serving as "the Judicial Officer presenting evidence against [Harper]." (Id. ¶ 34.) Harper lost the appeal. (Id. ¶ 35.) However, "[o]n or about December 25, 2007, [Harper] completed his psychological evaluation and was allowed to enroll in classes in January 2008." (Id. ¶ 36.)

On January 17, 2008, Harper visited the Registrar's Office to obtain "an emergency loan application." (Id. ¶ 37.) Although "he wanted to avoid any possible conflict at the Financial Aid Office," Harper "was told that only the Financial Aid Office could assist him in this matter." (Id.) Harper "was frustrated and felt like an outsider because several [staff members] were watching his every move." (Id. ¶ 38.) "Lavene came out to talk with [Harper] outside the Registrar's [O]ffice," and "an argument ensued as [Harper] was communicating to . . . Lavene that he wasn't getting the same treatment as others because he was a black man." (Id. ¶ 39.) "Lavene became angry and said, 'I'm done talking to this student!'" (Id.) Hancock, a Campus Safety lieutenant, came to Lavene's office and escorted Harper from the building. (Id. ¶ 40.)

On or about January 18, 2008, Robinson presented to Campus Safety "an [e]xpulsion letter to be delivered to [Harper]." (Id. ¶ 41.) The letter was delivered to Harper, and Harper left campus immediately after he received it. (Id.) Harper appealed the expulsion on February 28, 2008, but on March 13, 2008, he was informed via letter that his expulsion had been upheld. (Id. ¶ 43.) As a result of the expulsion, Harper was banned permanently from all UNO property. (Id.)

On February 1, 2011, Harper filed a four-count complaint against the defendants. (See generally id.) Count I alleges that the defendants "improperly and unjustifiably infringed on Plaintiff's right to the free exercise of religion, in violation of the First Amendment" and 42 U.S.C. § 1983. (Id. ¶¶ 44-51.) Count II, which is also brought pursuant to § 1983, alleges that the defendants "conspired to discriminate against Plaintiff because of race and have therefore deprived

Plaintiff of his clearly established equal protection rights guaranteed by the Fourteenth Amendment to the United States Constitution." (Id. ¶¶ 52-56.) Count III alleges that the "[d]efendants caused widespread publication of private intimate facts concerning Plaintiff in a manner that would be deemed outrageous and highly offensive to an ordinary reasonable person of average sensibilities," and thereby invaded the plaintiff's privacy. (Id. ¶¶57-62.) Count IV alleges that the defendants intentionally inflicted emotional distress upon the plaintiff. (Id. ¶¶ 63-69.)

On February 28, 2011, the defendants filed a motion to dismiss the plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Mot. to Dismiss, ECF No. 5.) The plaintiff has not responded to the defendants' motion, and the deadline for filing a response has lapsed. I find that the defendants' motion is ripe for decision.

## II.  STANDARD OF REVIEW

"Federal Rule of Civil Procedure 8 requires that a complaint present 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009). "[T]he pleading standard that Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Although the court must take the plaintiff's factual allegations as true when considering a Rule 12(b)(6) motion to dismiss, "[a] pleading that offers 'labels and conclusions or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555); see also Braden, 588 F.3d at 594. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557). To meet the Rule 8 pleading standard and survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557) (internal quotation marks omitted). In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–'that the pleader is entitled to relief.'" Id. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)) (brackets omitted).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may challenge either the factual truthfulness or the facial sufficiency of the plaintiff's jurisdictional allegations. See, e.g., Stalley v. Catholic Health Initiatives, 509 F.3d 517, 520-21 (8th Cir. 2007); Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In a facial attack, the standard of review is the same standard that applies to motions brought pursuant to Federal Rule of Civil Procedure 12(b)(6): I must "accept as true all factual allegations in the complaint, giving no effect to conclusory allegations of law," and I must determine whether the plaintiff has asserted "facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right." Stalley, 509 F.3d at 521 (citations omitted). In a factual attack, "the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993).

Here, neither party has submitted affidavits, depositions, or other evidence on the question of jurisdiction. I deem the defendants' motion to be a facial attack, and I shall analyze it using the standard that applies to Rule 12(b)(6) motions.

### III.    ANALYSIS

The defendants argue first that the plaintiff's claims must be dismissed because "[a]ctions against the University and University defendants acting in their official capacities are barred" under the Eleventh Amendment. (Defs.' Br. at 2, ECF No. 6 (citing Doe v. Board of Regents of the University of Nebraska, 280 Neb. 492, 511 (2010)).)

"The Eleventh Amendment immunizes an unconsenting State from damage actions brought in federal court, except when Congress has abrogated that immunity for a particular federal cause of action." Becker v. University of Nebraska at Omaha, 191 F.3d 904, 908 (8th Cir. 1999) (quoting

6

Hadley v. North Arkansas Community Technical College, 76 F.3d 1437, 1438 (8th Cir. 1996)). This immunity covers "not only actions where the state is actually named as a defendant, but also certain actions against state instrumentalities." Id. (citing Regents of University of California v. Doe, 519 U.S. 425, 429-30 (1997)). For instance, the Eighth Circuit has determined that "UNO is part of the University of Nebraska, and . . . the University of Nebraska and its institutions are considered an arm of the State of Nebraska for purposes of the Eleventh Amendment." Id. at 908-909. Furthermore, Eleventh Amendment immunity extends to claims for damages against state employees who are sued in their official capacities. Andrus ex rel. Andrus v. Arkansas, 197 F.3d 953, 955 (8th Cir. 1999). Thus, the Eleventh Amendment may prevent the plaintiff from proceeding in federal court against UNO (which is an arm of the State of Nebraska) and against the other defendants described in the complaint insofar as they are UNO officials sued in their official capacities.

There are three exceptions to Eleventh Amendment immunity. E.g., Bradley v. Arkansas Dept. of Education, 189 F.3d 745, 749-50 (8th Cir. 1999), vacated in part, 197 F.3d 958 (8th Cir. 1999); Buckley v. University of Arkansas Board of Trustees, No. 4:10cv2009, 2011 WL 309621, at *2 (E.D. Ark. Jan. 28, 2011) (quoting Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't, 510 F.3d 681, 695 (7th Cir. 2007)). First, "Congress has power with respect to the rights protected by the Fourteenth Amendment to abrogate the Eleventh Amendment immunity." Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 99 (1984). This exception does not avail the plaintiff (insofar as his claims are based on § 1983) because § 1983 does not override Eleventh Amendment immunity. See Quern v. Jordan, 440 U.S. 332, 342 (1979); Hadley v. North Arkansas Community Technical College, 76 F.3d 1437, 1438 (8th Cir. 1996). Second, "a State may consent to suit against it in federal court." Halderman, 465 U.S. at 99. The plaintiff has not argued that the State of Nebraska consented to suit in federal court, and I see no indication that it has done so. I find, therefore, that this exception is not applicable. The third exception, which is based on the Ex parte Young doctrine, see 209 U.S. 123, 159-60 (1908), merits some discussion.[5]

The Ex parte Young doctrine "allows suit against state officials in their official capacity for prospective injunctive relief to prevent continuing violations of federal law." Santee Sioux Tribe

---

[5] I note in passing that the defendants addressed the first two exceptions–but not the Ex parte Young doctrine–in their brief. (See Def.'s Br. at 1-4.)

of Nebraska v. Nebraska, 121 F.3d 427, 432 (8th Cir. 1997) (citing Seminole Tribe of Florida v. Florida, 517 U.S. 44, 73 (1996)). See also Andrus ex rel. Andrus v. Arkansas, 197 F.3d 953, 955 (8th Cir. 1999) ("The Eleventh Amendment does not bar official-capacity claims for injunctive relief against state officials."). Because the doctrine applies to official capacity claims against state officials, it is inapplicable to UNO. See Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985); Monroe v. Arkansas State University, 495 F.3d 591, 594 (8th Cir. 2007) ("While under the doctrine set forth in Ex [p]arte Young . . . state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment, the same doctrine does not extend to states or state agencies."). It is potentially applicable, however, to the extent that the plaintiff's claims seek 1) prospective relief 2) against state officials in their official capacity.

      I turn first to the question of whether the plaintiff seeks prospective relief in this case. "In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Verizon Maryland, Inc. v. Public Service Commission of Maryland, 535 U.S. 635, 645 (2002) (quoting Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296 (1997)). This inquiry "does not include an analysis of the merits of the claim." Id. at 646 (citing Cour d'Alene, 521 U.S. at 281). In Count I of the complaint, the plaintiff alleges, "Accordingly, Plaintiff seeks a judgment of this Court declaring the University of Omaha Nebraska [sic] University rules and or actions unconstitutional and unenforceable." (Compl. ¶ 51.) I take it that this prayer for declaratory relief "seeks a declaration of the past, as well as the future," legality of certain University rules, and I take it that the plaintiff does not seek in this count to "impose upon the State 'a monetary loss resulting from a past breach of a legal duty on the part of . . . defendant state officials.'" Verizon Maryland, Inc., 535 U.S. at 646 (quoting Edelman v. Jordan, 415 U.S. 651, 668 (1974)). I find, therefore, that Count I "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Id. at 645 (quoting Cour d'Alene, 521 U.S. at 296). None of the complaint's other counts seek prospective relief, and therefore I find that the Ex parte Young doctrine is inapplicable to them.[6]

---

[6] To be clear, then, UNO is entitled to Eleventh Amendment immunity with respect to all of the plaintiff's claims, and the remaining defendants, to the extent that they are sued in their

It remains to be determined whether Count I seeks prospective relief against state officials in their official capacities. The defendants themselves appear to have assumed that all of them have been sued in their official capacities. (See generally Defs.' Br.) I note in passing, however, that the complaint does not clearly allege that each of the individual defendants is a state official. For instance, the complaint includes no allegation that "Does 1-5" are state officials. (See generally Compl.) The complaint does suggest that Sell, Robinson, Hancock, and probably Lavene are employed by UNO, (see Compl. ¶¶ 18-19, 30, 40), but Thewke's position of employment is not identified. In short, the complaint is unclear about whether the defendants named in the body of the complaint and in the caption are state officials, and this ambiguity–together with the parties' failure to address this matter–makes it difficult to determine whether the Ex parte Young doctrine is applicable to Count I.

The defendants argue that Count I must be dismissed even if Eleventh Amendment immunity is not available. Specifically, the defendants argue that I must dismiss Count I because UNO's officials are not "persons" within the meaning of § 1983. (See Defs.' Br. at 3-4.)[7] Generally, it is true that state officials acting in their official capacities "are not 'persons' for § 1983 purposes." Murphy v. Arkansas, 127 F.3d 750, 754 (8th Cir. 1997) (citing Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989)). However, "[s]tate officials acting in their official capacities are § 1983 'persons' when sued for prospective relief." Id. (citing Treleven v. University of Minnesota, 73 F.3d 816, 819 (8th Cir. 1996)). Thus, to the extent that Count I seeks prospective relief from state officers acting in their official capacities, I cannot dismiss Count I on the ground that the officials are not "persons" for the purposes of § 1983.

Also, I note that the defendants' motion to dismiss does not account for any "individual capacity" claims that may be stated in the complaint. (See generally Mot. to Dismiss; Defs.' Br.)

---

official capacities, are entitled to the same immunity with respect to Counts II, III, and IV.

[7] The defendants' argument applies with equal force to Count II, which is also based on § 1983. I have already determined, however, that Count II falls within the Eleventh Amendment immunity owed to UNO and to the remaining defendants insofar as they are sued in their official capacities.

This is significant because "the Eleventh Amendment does not bar damage claims against state officials acting in their personal capacities." Murphy, 127 F.3d at 754.

"Public servants may be sued under section 1983 in either their official capacity, their individual capacity, or both." Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999) (citing Murphy, 127 F.3d at 754). "In actions against officers, specific pleading of individual capacity is required to put public officials on notice that they will be exposed to personal liability." Andrus ex rel. Andrus v. Arkansas, 197 F.3d 953, 955 (8th Cir. 1999) (citing Nix v. Norman, 879 F.2d 429, 431 (8th Cir. 1989)). "[O]nly an express statement that [public servants] are being sued in their individual capacity will suffice to give proper notice to the defendants." Johnson, 172 F.3d at 535. For example, the Eighth Circuit advises, "[S]ection 1983 litigants wishing to sue government agents in both [individual and official] capacities should simply use the following language: 'Plaintiff sues each and all defendants in both their individual and official capacities.'" Nix v. Norman, 879 F.2d 429, 431 (8th Cir. 1989). "Absent such an express statement, the suit is construed as being against the defendants in their official capacity." Johnson, 172 F.3d at 535.

Here, the complaint contains no statement that each count is directed toward all of the defendants in both their individual and official capacities. Count II does state, however, that the plaintiff "is entitled to an award of monetary damages, including punitive damages[,] against the Defendants in their individual capacities for their outrageous actions against plaintiff, and equitable relief." (Compl., ¶ 55. See also id. ¶ 54 ("Defendants, acting individually and under color of state law, have conspired to discriminate against Plaintiff because of race . . . .").) I find that this statement is sufficient to alert the defendants that Count II is directed to them in their individual capacities–though I note that no individual defendant has appeared in this action.

The foregoing analysis leads me to the following conclusions. First, I agree with the defendants that Eleventh Amendment immunity insulates UNO from liability on all of the plaintiff's claims. UNO will be dismissed from this action. Also, to the extent that the remaining defendants are state officials sued in their official capacities, they are entitled to this same immunity on every count except Count I. I cannot determine whether the official-capacity defendants are entitled to Eleventh Amendment immunity on Count I, partly because the complaint is poorly drafted, and partly because the defendant failed to address the applicability of Ex parte Young doctrine in its

brief.[8]  Similarly, a question lingers about whether Count II is properly directed toward some or all of the defendants in their individual capacities.  Counts III and IV will be dismissed in their entirety, however, because the complaint contains no allegations that place these claims beyond the reach of the defendants' Eleventh Amendment immunity.[9]

Given the complaint's deficiencies, and in light of the plaintiff's failure to respond to the defendants' motion to dismiss, it seems to me that a dismissal of the entire complaint is warranted.  Nevertheless, I shall grant the plaintiff leave to file a motion to amend the complaint.  This motion to amend must be filed within twenty days of the date of this memorandum and order, and it must be accompanied by a copy of the amended complaint that the plaintiff proposes to file.  See NECivR 15.1(a).  The proposed amended complaint must identify all defendants in its caption; specify whether the defendants are sued in their official capacity, individual capacity, or both; and clearly specify whether any prospective relief is sought.  If the plaintiff does not file a motion to amend within twenty days, this action will be dismissed by me, sua sponte.

**IT IS ORDERED** that:

1. the defendants' motion to dismiss, ECF No. 5, is granted in part;
2. all claims against Defendant University of Nebraska Omaha are dismissed;
3. Counts III and IV are dismissed in their entirety;
4. Count II is dismissed insofar as the remaining defendants are sued in their official capacities; and

---

[8] I recognize that the defendants' failure to address this point might be attributable to the complaint's limitations, and I note once again that the plaintiff has declined to file a brief in opposition to the defendants' motion to dismiss.

[9] I note in passing that the defendants have argued in the alternative that Counts III and IV must be dismissed for failure to state a claim upon which relief may be granted.  (See Defs.'s Br. at 5-7.)  The defendants' arguments are well-taken, and I find that Counts III and IV would be subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) if the defendants were not entitled to Eleventh Amendment immunity.

5. the plaintiff may file a motion to amend the complaint within twenty days of the date of this order, as explained in the accompanying memorandum.

Dated May 31, 2011.

BY THE COURT

s/ Warren K. Urbom
United States Senior District Judge